Good morning, everyone. We're ready to get started in the matter of William Wallace v. Price v. Mr. Lowry. Before we start the clock, I just wanted to ask you one general question, Mr. Lowry, about the status of Mr. Wallace. He's serving a sentence. Is that on a second-degree conviction at the time, at the present? Well, at present, he's still on death row. But the first-degree conviction was vacated. Is he serving a sentence on the second degree? Yeah, the second degree is still in place. What was his sentence on that? That was life without parole. Okay. In other words, were we to affirm all around, his sentence would be life without parole? That's correct. Okay. Just curious. What was that again? If we affirm what? He's still serving a sentence of life without parole. And if we were to affirm the, were we to affirm the district court, that would be his sentence? Well, at least in theory, the Commonwealth could always try to retry him on the first-degree murder conviction. Well, you're not appealing the denial of any relief on the second-degree conviction. No, we are appealing it. You are appealing it. That's what I thought. But if we affirm it, then... Okay. Very good. Let's start. Mr. Laurie, your appearance, and then go ahead with your argument. I imagine you want to reserve some time for rebuttal. Yes. May it please the Court, Matthew Laurie, on behalf of the petitioner, William Wallace, who's the appellant and cross-appellee in this Court, I would like to reserve five minutes for rebuttal. Very good. In our briefs, we showed five serious constitutional errors requiring that relief be granted. Unless there are specific questions about other issues today, I'd like to focus on three of those issues. First, the exclusion of Anita Johnson's statement concerning an admission by a co-defendant and key witness, Henry Brown. Second, the use of the informant, Oberlin Gorby, who supposedly elicited incriminating statements from Mr. Wallace in violation of his Sixth Amendment right to counsel. I just had one other question. Are you also dealing with the cross-appeal at this point? I think it's much easier to deal with both of them at once. I think so, too. And finally, the Mills violation is the last one that I'd like to address briefly. What violation, sir? Mills v. Maryland. Turning first to the Chambers v. Mississippi and Confrontation Clause issue, as Chief Magistrate Judge Kayanza and Judge McLaughlin correctly found, the exclusion of Henry Brown's admission to Anita Johnson violated both the Due Process Clause and that substantive evidence was excluded. And it also violated the Sixth Amendment's Confrontation Clause because the defendant was prevented from fully impeaching Henry Brown's testimony. Now, this is a case where the jury that convicted Mr. Wallace and then sentenced him to death never heard that his co-defendant, who was the primary witness against him, told the co-defendant's girlfriend that he shot the girl. Obviously, that's critical evidence for the defense in this kind of case, but it was kept from the jury. The jury never heard it. Why did the Pennsylvania Supreme Court say that was all right? Well, the Pennsylvania Supreme Court was the only time that it ruled on the merits about this. It was presented with a claim about, under state law, that the impeachment should have been allowed. And they said that in dealing with that state law claim, they said that Mr. Brown's credibility was already at issue. So they did not rule on whether the impeachment should have been allowed, but they said because his credibility was already at issue, it was harmless. Now, is that binding on us? Well, I don't believe it is for a few reasons. First of all, because the Pennsylvania Supreme Court was addressing a state law claim. But based on the same facts and on the same issue? Based on the same general facts. But they were also, not only was it a state law claim, but it was about the defendant not being allowed to conduct the impeachment. They didn't rule on, they didn't address, what about the fact that the substantive evidence should have been admitted as evidence of third-party guilt. Is the standard for harmless error different for substantive evidence than it is for impeachment? Well, I think if you look at the Chambers cases and the Chambers standard, the standard is basically, as it was rephrased in Holmes recently, that the right to present a complete defense is violated by evidentiary rulings that exclude critical defense evidence for no legitimate reason. Okay, if it's critical defense evidence, it seems to me that harmless error is bound up with the question of whether the evidence is critical or not. But then, if I can go a step further with this. If you were to say, well, we need to, under AEDPA, we still think we need to defer to the harmless error ruling. The reason for finding harmless error that the Pennsylvania Supreme Court gave is unreasonable in light of Chambers. Because in Chambers, we had a very similar situation where there are, the defense was excluded from introducing evidence of third-party guilt, Mr. McDonald. And there was plenty of evidence already in the record that put Mr. McDonald's credibility in issue. There was already in the record his signed, sworn confession, which he later retracted. But the Supreme Court said it was error to keep out the evidence of other admissions that he made to third parties. So it's not reasonable under Chambers to say, well, the witness's credibility was at issue, so it's harmless to exclude the substantive evidence that a third party is guilty. My question was, in reviewing harmless error, if evidence was excluded for impeachment purposes, is the standard to determine harmless error different than substantive evidence that is excluded, say, for hearsay reasons? Well, I think that the standard is the same. Well, impeachment evidence goes to credibility. It's not substantive evidence. It's not substantive evidence that someone else did the crime. It's substantive evidence that you don't want to believe Brown. Whereas if it's admissible under Chambers as substantive evidence, then it's evidence that Brown did the crime more than just that Brown is incredible. So isn't there a different standard in determining what error is harmless depending upon what the evidence has been proffered for and what the basis of the review of the Pennsylvania Supreme Court was? I think that I agree completely with what you're suggesting, but I just phrase it slightly differently because I don't think that the standard necessarily seems, but that the analysis has to be different. You're looking at apples and oranges, and the Pennsylvania Supreme Court was looking at impeachment, and it was not looking at this evidence as substantive evidence. That's exactly right. Which is your view? Was the evidence offered to impeach, or was it offered to prove that it was Brown who fired the fatal shot? It was offered for both purposes, Your Honor. It's fairly clearly spelled out in the record that it's being offered for both purposes. If you look at... Well, if you look at 561A2nd, the Pennsylvania Supreme Court Review on Appeal, it would appear that they confined their analysis strictly to impeachment evidence. They did confine their analysis to impeachment evidence, but at trial, the defense counsel argued it should be in both as impeachment and as substantive evidence. Did you raise that? I don't know if you were there, but was that point raised before the Pennsylvania Supreme Court? Because you're telling us that the Pennsylvania Supreme Court saw this matter as a matter of state law, but was the federal issue raised there? The federal issue was not raised on direct appeal. It was raised in the PCRA litigation, and the court said that it was previously litigated. You say the state court's decision was contrary to Chambers. In Chambers, was the evidence offered substantively, or was it offered to impeach the witness? It was offered substantively. I think it was offered to prove that somebody else did the killing. Exactly, to show that the witness, McDonald, did the killing. Now, in Chambers, there were four different confessions, and the court ultimately allowed one of the confessions, if I'm not mistaken. The trial court did, yes. And all of the cross-examination was included, contrary to this case, where there was extensive cross-examination. Mr. Brown, can you distinguish why the state court's decision was contrary to federal law, given those differences? Well, the state court never really ruled on the substantive evidence claim. And what you have to look at, what Holmes says that you have to look at in these kind of cases, is whether there was a legitimate reason for excluding the evidence. And there are only three reasons that were offered by any of the state courts for excluding the evidence. One was the hearsay rule. And under Chambers, as the district court found, our case fits in perfectly that the hearsay rule isn't a reason to exclude reliable third-party evidence of third-party guilt. And here we have a declaration against interest. It's made to a clerk's acquaintance. It's corroborated. It falls exactly into Chambers there. Do you agree with Holmes that our focus is on the reason for exclusion, rather than the reason for which the accused wants to use the evidence? That's what I'm trying to convey, is that the reason for exclusion based on the hearsay rule is not a legitimate reason to keep it out, because you can't exclude reliable evidence under the hearsay rule that's critical to the defense. And it's reliable here and critical to the defense for the same reasons as in Chambers. And in reviewing harmless error, we look to what the Supreme Court, the manner in which the Pennsylvania Supreme Court reviewed it, to see if we are bound by that determination. That's correct. If I could make a couple other points about the reasons given by the state courts for excluding the evidence. Your point is that it was not harmless. Pardon me? Your point is that it was not harmless. Yes. Right. And the Pennsylvania Supreme Court, in finding it was harmless, looked at it for impeachment use purposes as opposed to substantive evidence use purposes. That's correct, Your Honor. And therefore, we should not be bound by the Pennsylvania Supreme Court's finding of harmless error. That's correct, Your Honor. Now, your point, if I understand, part of the defense strategy is that Mr. Wallace had nothing to do with this crime. Well, yeah. I think the defense strategy was generally to require proof beyond a reasonable doubt that he had any connection to the crime. Yes. But I thought he was asserting generally that he was not involved in any of the other crimes. Well, yes. He didn't testify. So I guess I'm just thinking out loud what difference does it make who fired the fatal shot if his defense is I wasn't involved in any other crimes. Well, but he's also asserting, he's also trying very hard, the defense tried very hard to get in this evidence, that if you do think Mr. Wallace was involved here, he didn't shoot Ms. Spalla. And so the fact that he didn't shoot Ms. Spalla would be relevant in sentencing, and it's also the way the case was tried, it was tried as first-degree murder if Wallace shot Ms. Spalla. And so that was the critical question in the case. Did he shoot her or did Brown shoot her? If he could establish that he was not the shooter, then he would not be first-degree murder. He would not be first-degree. That's correct. What you're saying is, well, the jury might think that he was notwithstanding his position that he wasn't there, that he was there, but that he was not the shooter. Exactly. Exactly. The other reasons that the state courts gave for excluding the evidence were that the statement by Brown was not inconsistent with his testimony, which is clearly wrong in our view, and that was what the trial court said. The Pennsylvania Supreme Court didn't go along with that. They just left that to the side and said harmless error. And then the third one was that Brown's credibility was already at issue, and we've already discussed that. So there's not any legitimate reason for keeping out this critical evidence in a capital case when the jury's deciding, was Mr. Wallace involved at all, and secondly, did he shoot Ms. Spalla? Well, there was other evidence implicating Mr. Wallace in the shooting, specifically with the .32-caliber handgun, that he had a handgun before the shooting, before the robbery, and after the robbery. Right, but virtually all of that evidence came from Mr. Brown. So on the impeachment side of the ledger, if the fact that Mr. Brown lied about not shooting Ms. Spalla, if the jury concluded that was a fact, that would also seriously impeach his testimony, and most of the evidence against Wallace, almost all of it, came either from Brown or from his girlfriend. Well, the state court concluded that Brown had in fact made an admission. Now, I know he equivocated and he went back and forth and he waffled, but at one point he did admit that he fired the fatal shot. Right, but what he actually did and what the state court found was that he made some statements earlier, but then over and over again, he denied. You know, it's quoted from pages 23 to 25 of our brief. You told Ms. Johnson that you shot the little girl, right? Yes. No. Wait a minute. I did say something to that effect, but I don't remember exactly whether I did or not. You are aware that they found a gun, there was one bullet missing in another chamber, empty, is that not correct? Yes. Didn't you show Anita that .38 caliber gun and show her where the bullet was missing and say that you had shot the girl? No, I didn't. You didn't say that? No, I didn't. You told her that you shot the little girl, didn't you? I don't remember that, no. And Anita was bragging because you told her that you shot the girl, didn't you? No. I mean, it's not just an I don't remember, it's some waffling and then over and over again, no, no, no. So I even, at oral argument in the court below, even the Commonwealth conceded that there was no straightforward admission by Henry Brown that he shot the girl. It's clearly inconsistent with his statement. If there are no other questions, I'd like to turn to the Messiah claim, at least briefly. And what I would suggest that we ought to do with respect to the Messiah claim is to compare this case to the facts of the United States Supreme Court case of United States v. Henry and this court's decision in United States v. Brink. And the facts of this case are really quite close to Henry. You had a man who was acting as a government agent before any contact with Mr. Wallace. The prosecution and the police knew that the informant would have access to the defendant. And they singled out Mr. Wallace, just like Mr. Henry, as somebody they were interested in getting information about. You know, all the circumstances are very suspicious, of course, but is there any evidence that Gorby actually elicited testimony from Wallace? Well, I think that's one of the things, one of the reasons this case is a lot like Brink is that Brink had similar circumstances that gave rise to a real suspicion about what was happening with the informant. And Brink, this case, remanded for a hearing to flesh that out because here the evidence is all, it's rather spotty, it's in different places in the record. And what we would suggest is that on the Messiah claim, there really ought to be a remand to flesh it out further. So at this point, you don't have any evidence that Gorby actually elicited statements from Wallace? I think there's certainly an inference. It's a lot different from a case where the government says, yes, we put this informant there and we said, just be a listening post, just see if he says anything. Here, the circumstantial evidence is they put him there with the intent to see if he could get any information. I think that's a pretty long stretch. As Judge Fuentes is saying, there's nothing in the record that indicates that it was more than just, you know, we know you know this guy from past contact. We're going to put you next to him. If he tells you anything, let us know. Well, that would be one thing if they admitted that was what the plan was. They've never admitted that they were using him as an agent in any way. But isn't the burden of proof on you? The burden of proof certainly is on us. And that's why I think there should be a remand for a hearing on the claim. I'm always struck when people make statements to other prisoners because personally, you think, well, you know, this guy can't be too trustworthy. He's in prison. Of course, the person saying that is also in prison. I just can't get over it. It happens all the time. Yeah. Yes, that's that's true. Yeah, it is peculiar. I figured that would be a good time to keep your mouth shut. Well, yeah. Those of us who are smart enough to stay out of prison, maybe you're also smart enough to keep our mouths shut. Well, that's true. I think that I think it's in Henry that the Supreme Court talks a bit about how the specific pressures of being in a situation of being incarcerated, waiting to stand trial is, you know, one of the factors that they look at in terms of whether there was an elicitation of the statement. If there are no other questions on Messiah, I want to then turn to the Mills versus Maryland violation. In this case, there is actually a very, a very clear violation of Mills versus Maryland under this court's precedence in Frye and Banks and most recently in Albrecht. The instructions here on the verdict slip are are virtually identical to what you what this court reviewed in Frye. And and in fact, the district court found that there was a Mills violation here, but ruled that it was harmless. And what was the what was the most violation? The the Mills violation is in the, you know, primarily in the jury instructions that convey to the jury the the notion that in order to find and then weigh a mitigating circumstance, the jurors have to be unanimous as to that mitigating circumstance. It doesn't make any difference if we reject the government's cross appeal. Well, no, that's true. But this is, you know, it's one of the issues and it's it's a fallback issue, I guess. If if everything else is rejected, your position on the ground testimony and that whole conviction is out with respect to the first degree murder, such as the testimony, such as the conviction. That's correct. So then. That's true. But not so if we reinstate the death penalty. That's correct. Now, but in terms of harmless error, Mr. Wallace insisted that he wanted no mitigating evidence presented. Doesn't that play into the equation? Well, I could conceivably. But but the fact is that the trial court instructed the jury on two statutory mitigating circumstances. Just his age and youthful age and a light criminal sentence. A lack of a significant prior record. Yes. But wasn't the jury presented with that information and didn't they act on it anyway? Well, we don't we don't know what they did. They they rendered a verdict that said that the aggravating circumstance outweighs any mitigating circumstances. And they didn't say what mitigating circumstances they found. So only only two circumstances, but only only two circumstances specifically presented. But the district court suggested that the error was harmless because essentially everybody must have found age and lack of prior record. But with an age of 25, for example, many jurors could think that 25 is mitigating and others think it's not mitigating. And the Commonwealth argued fairly vigorously that there wasn't anything that would mitigate this crime. So I I don't think that that we can accept the harmless error analysis in a mills case where part of what is at issue with mills is that we do not we cannot allow an unreasonable risk that that somebody was sentenced to death in violation of the mills principle. You know, I was told by a New Jersey state judge that the use of drugs is listed as a mitigating circumstance in the death penalty case. But the problem with it is the jurors think it's an aggravating circumstance. But they don't think it's mitigating. They think it makes it worse. So I just wonder what it all means listing these factors. Well, well, it is hard to know what it means. And that's that's one of the reasons why when there's a mills violation, it's it's very rarely harmless because you don't know you don't know what it means. You don't know what effect it had on the jury. Which of the instruction have been pardon me? What should the instruction have been? The instruction was that you have to find unanimously mitigating factors. That's the instruction that you object to. Yes, the instruction should be that that that any individual juror who is convinced of one of the mitigating circumstances by a preponderance of the evidence is free to to find that circumstance and weigh it when they get to the sentencing. So you're saying if in any case where there's more than one mitigating circumstance that you can't have the instruction that we have thrown out is invalid and fry, et cetera, et cetera. Yeah, I think. Or whether there's any I guess whether there's any mitigating. Well, I think there I think there there are two conceivable situations where it could be harmless, where there's absolutely no mitigation would be one. And the other one would be where it is clear from the record that the jury found everything that the defense proffered. But it's not clear from this record that the jury found everything that the defense proffered or that they were instructed on. And therefore, it's not harmless. Mr. Larry, we'll get you back on. Thanks very much, Mr. John. Sounds like my knee this morning. My name is Mike. I would like to concentrate mostly on the chambers violation. And I think there's some inaccuracies stated here. But that has a lot to do with my appeal. But I would like to reserve five minutes and talk to Mission Mills. The first thing is it's being represented. And I hope the courts are aware there's two. There's two shootings here. The first was Luisa. The second was followed. The old man and the young girl. It was representing that the jury never heard. How old was the old man? I think it was in the 70s. Not so much like that. I don't think so either. I mean, like 50s. But it was represented that he the jury never heard the phrase. He shot the girl. That there might be two shooters. That is not true. The phrase he shot the girl and what we're dealing with here is not really a confession. It's just a sentence. And it's ambiguous. Brown admitted that he might have told or Anita Johnson, his girlfriend, might have understood him to mean that he, he himself, Brown shot the girl. He then, he said, I'm out of it. About six times he said, I said something like that. But that's not really what happened. Or it's possible he might have been bragging. Or Anita might have misunderstood who the reference was. We're well familiar with these facts. The question is, should this statement have been presented to the jury? And I gather before this case got up to us, there was really no, before the district court there was no dispute who he referred to. At the time it was presented, no. The only way it could come in was as a rebuttal piece of evidence. Well, it could come in as, on credibility, impeachment evidence. It could come in under Chambers. Right. Well, I disagree that Chambers is correctly being followed. Why isn't the statement exculpatory? When he says, he tells Anita Johnson, I shot the girl. The phrase was, according to Anita Johnson, he shot the girl. We don't know what Anita Johnson understood. But that's what he said. And maybe it's for a jury to figure out. But let's assume, and I, like Judge Roth, before the trial, everybody understood that to have been Brown. I think it's a little late at this point. No, that's not true. Look, if you're going to argue that before us, I think there are a lot more important things you might argue before us. Let me put it that way. Well, I read the statement, and I thought it was quite clear that Brown met himself when he said, he shot the girl. I don't see how the statement can be read any other way. Well, that was my point as well. I mean, that's the way I understood it. That's the way I thought all the parties were understanding the statement. Well, let's assume for a moment that a reasonable jury could look at it that way. Why isn't that relevant exculpatory evidence? It would be relevant exculpatory evidence, too, to the Spala shooting. But I think it was hard. But that's what we're talking about. There was the other case. Yeah, but basically we're talking about its admission in regard to who shot Spala. Because the defense was taking the position that he wasn't involved in any way. And the statement, if you admitted the statement, the first part of the statement, clearly it is, and I don't see how this could help the defense. The first part of the statement was he, Brown, had talked to Johnson and said, I'm upset because Tippie is trigger happy. That's the quote. He's trigger happy. He couldn't control the old man. He shot him in the back. Okay, but the defense is willing to live with that earlier part of the statement. They say, we want the statement in. Now, why shouldn't the statement come in? Isn't it exculpatory as to the Spala shooting, as Judge Puentes just said? No, the way the case proceeded was that Brown was, they tried to get Anita to say, what was the content of the conversation? It was objected to. It's hearsay because Brown was available to testify. Once Brown testified, he said, I didn't make a statement to that effect. No, but it was equivocal. I mean, this was pretty direct. See, wouldn't it be different if Anita was referring to something that somebody who wasn't even there told her? You bring in somebody to say some third party, no one even knows where he is, told me he shot her. Now, that's not the case here because Brown's in there trying to hang your, hang the defendant, not your client, hang Wallace. I mean, I think if I were on the jury, I would want to know that the principal, I don't know if he's a principal witness for the state, he's certainly a critical witness, but a critical witness who's accusing the defendant of shooting and killing the middle-aged man was, said that he did it, so. Well, he did say that. He did say that, and also, I think the court is overlooking the fact that Anita Johnson was permitted to testify that she took this interpretation because Brown showed her the gun. There was a bullet missing. And she took that to mean that he was involved in the shooting. Look, we have the statement. The defense has said under Chambers, the statement is admissible. What is your position that it's not admissible? Because the factors with respect to Chambers aren't present here. What factors are those? Well, first of all, that the statement is given under reliable circumstances. Why isn't it reliable? Why isn't it reliable is because the statement was given. The statement was given from the statement you can see. They were smoking pot at the time. He was. She was not. Both were. Both were. The record, as I've seen it, says that she was not. They were relaxing pretty well out of it. They were both smoking. It seemed like the magistrate judge had analyzed this perfectly with regard to the factors that were set out in Chambers. The spontaneity, the close friend, the indecency of reliability. That wasn't reliable. But secondly, as to the corroboration. Isn't the magistrate judge saying he was smoking pot and she wasn't? I'm not sure what he found. Well, I mean, that's pretty significant with what we're dealing with now, isn't it? Yes, it could be. It could be. But it was clear that they were both doing it. But the big thing was the corroboration is missing from this case. Because the hard evidence of the case is that there was one shooter. OK. There is Brown's gun, which had a bullet gone when he came back from the robbery. Brown's gun is a .38. And the murder weapon was determined to be a .32. Well, there's various evidence that the magistrate judge found concerning that, too. I'm unsure what Judge Waroff would mean. Well, there was evidence that the exit wound in Scala was larger than that, which would have been caused by a .32 caliber. And the medical examiner said it would appear that one bullet may have been a .38. The only thing there was Abernathy's testimony. It was Abernathy's testimony on the autopsy. But when he testified in court, he said, I can't determine the ballistics from the size of the exit wound. But isn't that cut in favor of allowing the statement to come in? No, because the evidence, the trial record is showing that I have no evidence to conclude. The only evidence was the .32 and the same weapon killed both people. Brown, there was testimony brought in. Wallace on the .32. The .32 is missing after the shooting. Wallace is the only one cleaning his clothes. All the evidence is that he and he alone was the only shooter. There's no corroboration that there were two shooters. Now, you know, the magistrate judge made certain findings in determining that Chambers applied. And if you want to change the factual basis, don't you have to demonstrate to us that there was clear error in the determination, that no reasonable jury could find? With all respect, I feel like that's what I'm doing. I mean, I don't understand why. Because you are completely ignoring one side of the evidence. You are simply trying to argue to us again that the magistrate, in considering the evidence, decided wrong. But that's not what you do in an appellate argument. We aren't a jury you're arguing to again. The magistrate judge made certain findings of fact in his determination that Chambers applied. And it is not on this appeal, your function, to try to re-argue the facts unless you can determine that the conclusion is absolutely unreasonable. And I think you've got to deal with the facts on the other side and not simply say, well, obviously, Chambers doesn't apply because of A, B, and C when you exclude X, Y, and Z. And in addition to that, there's another finding that the statement was made against penal interest as another reason for allowing the statement on Chambers. Do you dispute that the statement was made against penal interest? Well, the statement is against penal interest in that Brown is saying he's complicit in a robbery with a double homicide. But again, I don't believe a fair reading of the statement. It's ambiguous at best as to who he's referring to. Well, we're assuming that a reasonable jury could make the conclusion that Brown is the one who fired the fatal shot. And wasn't the statement made very close to the incident in question, in other words, within two days? And doesn't that lend some credence to the statement in the Chambers analysis? Within two days, but again, I think the jury heard that, the jury understood what they were trying to present, and the jury rejected that. And wasn't the statement made by Brown to someone with whom he had a close relationship? Yes, he was. Aren't those all the Chambers factors that would argue in favor of allowing the statement to be made to a jury? Again, the statement has to be clearly, clearly against his interest. And you have to understand the context. Well, if I say I shot somebody. It's clear that there's only one shooter. If I say I am the one who fired the fatal shot, isn't that against penal interest? He doesn't say that. The statement is coming from a person, and she's referring to two individuals. The magistrate judge determined the last two Chamber factors are easily satisfied. Brown's statement was self-incriminating and unquestionably against his penal interest. He had nothing to gain by telling Johnson that he had shot the girl. In fact, with his history in the criminal justice system, he could have known that his confession would lead to criminal prosecution. Now, you're trying to argue back that he doesn't refer to Brown, and I think if that's the only argument you've got to make, you are far from at least convincing me that Chambers does not apply. Yeah, I couldn't see how that statement would be read, other than the speaker Brown said it. The statement also says that he didn't want to touch the register, and we know that Brown did touch the register. He didn't want to touch the register, and as he was leaving, he told me that he shot the girl. What about harmless error? Are we bound by the Pennsylvania Supreme Court's determination that the failure to admit the statement was harmless error? Well, I think the court ruled it was harmless error because they took it to mean that he didn't make the admission that I said something to that effect. So, if they were allowed to put on a statement as a rebuttal piece of evidence, as impeachment evidence, it was harmless. Under AEDPA, are we bound? I can't say that. I don't think you are bound by the harmless error. Okay. Good. But I think the reason is somewhat different than what's being presented here. I think they concluded it was harmless because the statement came in through Brown and other people anyway. But we're not bound by that. You just said. I have to admit that I don't believe you're bound by that. As to the messiah claim, before I leave, I do think, and I think I referred to this, that the sanction, the remand for a new trial as to Spala, I think that's, I'm not sure, but I think that would be inappropriate because if it is permitted, you can still make the finding that this didn't come out, but still clearly Wallace is guilty of second degree as to both shootings because it's clear from all statements. I don't understand that because if the jury had found that Brown shot a male, couldn't the jury have acquitted him of the murder of that person completely? No. He, Brown, this was a robbery that was ongoing from the statement, from all evidence, from the statement, the testimony, the statement itself, was that Wallace killed the first person and wanted to silence the remaining witnesses. But still, whoever pulled the trigger, whoever pulled the trigger, although I absolutely believe there was only one shooter, both are responsible for the second killing. As a practical matter, as an important point, as I say, if the following would happen, if we upheld the district court actions, the magistrate judge, in all respects, you have to grant a new trial. You don't have to grant it, but the point is, he's either, he's not released because he's not actually released because he's standing for life without parole on the other conviction. So, but in theory, he's released on the first degree murder unless you try him again. But, now I understand if you try him again, you might get a, you know, a death penalty conviction. I understand that. But as a practical matter, if we uphold it, it's not trying again, and you just drop that case, he just does the life. As a practical matter, maybe this is just an emotional thing, but as a county prosecutor, there is the family of the other side, and I think that if they hurt him, well, he was guilty for that, but because of either one of the Mills arguments or something else, the death penalty is vacated. But I believe, on an emotional level, that the conviction of second degree on the two killings is more of... There's no question in my mind that when you read this thing, you do get the sense that Wallace is guilty. However, that's not exactly the test, what an appellate judge thinks years later, you know, his sort of semi-emotional feeling, we can't decide the case like that. I understand. If we could, it would be a lot easier. But I understand your view. In other words, it's sort of distasteful, in the face of that, that I can't believe. And guess what? That's what you learn to do when you're a judge. I'm talking for the other. You were suggesting before that if we were to disagree with the first degree, that we could enter judgment of conviction of second degree. Did I hear that correctly? Yes. Do you have a legal basis for an appellate court doing that? I can't say. Well, I mean, I understand your theory that that's what should have happened if the jury didn't think that Wallace pulled the trigger. But you know, sometimes a jury just comes back not guilty. Obviously, the jury is concluding that he was involved and he was there, otherwise you wouldn't have the tips. I understand that. I've never seen it happen, Judge. You're saying it would be an inconsistent verdict. But, you know, inconsistent verdicts are upheld all the time. Chief Justice Rehnquist wrote the opinion on that. You can't throw out a verdict because it's inconsistent, unless one of the counts is legally dependent upon the outcome of another count. In that case, you can't. And the second degree murder conviction on Luisi was because he had been acquitted of first degree murder in one of the prior trials because of what was considered improper prosecution use of evidence. So if the fact that there is a difference between the convictions on the two counts, you're being hoisted by your own batard. I'm not sure I follow that. I'm sorry. There was a prior conviction under another administration that had to do with turning over brave materials. But that was ratified. He was acquitted of first degree murder and convicted of second degree murder on the Luisi killing. Therefore, he could not be tried again for killing Luisi, a first degree murder, because he had been acquitted of that double jeopardy. It's a fairly basic legal principle. Well, that's a fact. That's what happened. At the first trial, nothing happened. At the second trial, he was acquitted of first degree murder of the male, of Luisi, but convicted of second degree. So once that's done, if there then has to be a retrial, which there had to be because of what the Supreme Court did, then in that event, you can't retry him for something that he's been acquitted of. Well, he was convicted of Luisi. No, but you couldn't retry him for first degree murder because he had been acquitted of that. Should I move ahead to the... Unless there's another question, just briefly address Masai. If the court has further questions, I'll gladly come back. As to the Masai claim, there was a statement made that he was acting as an agent. There was a full hearing on this. His testimony was that he was not acting as an agent on this matter. He had previously acted as an agent for the government on other matters. On this one, my review of Judge Bell's opinion, in my recollection of that hearing, was that the police were approached. He said, I heard this from Wallace. You could deal with the obvious circumstances really beyond suspicion that he was placed in the very same prison that... There's no evidence that he was placed. He was placed in the prison. This is a small county prison. What an incredible coincidence that he happened to be placed in the cell right next to Mr. Wallace. He happened to come forward with this admission that was very helpful to the government. I don't know, but you have to recognize, and they didn't develop this evidence, this is not a large prison, like in some of the other cases where there's only some place to go. There's a limited amount of space. So all of this is a series of coincidences? Actually, when a person's coming in from the out of the county, he's probably just on one small wing of the Washington County Jail, as it exists. And back then, it was very likely that he was going to... They have a wing of maybe six cells. By the way, I'm not sure that's wrong. I just think that it's part of a test in whether or not the government... I know it's suspicious, but there's nothing there. Nobody testified that he was ever intentionally placed into an adjoining cell. Now, I can't speak after he gave that initial statement. Everything as to the initial statement was that this is something that I overheard. He offered it to the police. And that's all that was used in the trial. I don't know what happened later on for whether the police or the DA says, we'll go back there and do this. But as to the statement that was used in the trial, that comes from... That came from Gorman. There's no quid pro quo. When he was using the third trial, he had already served his sentence. He was then serving a federal sentence. He testified. I'm getting nothing out of my testimony today that there was no quid pro quo. And that was disavowed. So there really was a full hearing on that. When the judge looked into it, Judge Bell examined it. How come co-defendants? Why was his sentence changed? And it's being represented that he somehow received a probationary sentence. He was given credit for it two and a half years later. But the magistrate judge did find that there was no eliciting actual testimony by Gorby. It was freely given by Mr. Wallace. They have not developed that. And to send it back for another hearing, it's been done. It's already occurred. As to the Mills claim, I would agree this case is similar to Frye. But again, it's a little bit different procedural posture because of the fact that Wallace did not give any mitigation. He did not want to give any mitigation evidence. But there was mitigation evidence presented. The court on its own, you know, Fairness says he is of, I can't remember, 27 years of age. He doesn't have much of a prior record. There was a discussion on that. The jury took two hours to do a very, very accurate, very precise. Obviously, the jury just on its own found that that did not outweigh the killing of two people. But did they believe they had to find that unanimously? Or could one juror, did one single juror understand that that did not have to be unanimous and that that one juror could make the difference? And isn't that what Frye says? Isn't that the Mills-Frye standard that one juror alone can say, hey, I find mitigation. I think, though, the only way that I can answer what was going on in the minds is that they were polled at the end and the court asked them, is this what you found? Yeah, but if they mistakenly thought that they had to be unanimous on mitigation, isn't that what Mills, isn't that what Frye have established? They cannot be under the impression that they have to be unanimous on mitigation. And if the jury instructions don't convey that message, then you've got to redo the sentence, the penalty phase. Right. Yes. So you still have the Mills for the homicide. And again, though, on a gut level, if there was a conviction of a light conviction on two, the Mills question wouldn't resurface again. But that is, I mean, it is very similar to Frye. The only thing would be at the existence at the time whether the Frye ruling could be retroactively applied towards this case. So you say if Frye could be retroactively applied, it does apply. I mean, you know, compare the two instructions, they are similar. I can't hold the obligation of candidates to the court and the two are written almost like exactly the same. There's only the question whether it's applied retroactively. If the court determines that it's applied retroactively,  that I can hold the obligation to the court to reset. If the ruling in court stands. Okay. If there's two light, who's to say? Your very best argument on the cross appeal to reinstate the first degree conviction and the death penalty is the violation of Chambers? Yes. Okay. Mr. Lorry, five minutes rebuttal. Yes, Your Honor. I just want to get one thing straight in the story. You're the appellant and the state's respondent of the cross appellate, the state official. You're the appellant on the other convictions besides the first degree murder conviction. You appealed first. Yes. Okay, now, if we reject the cross appeal and uphold the order on the ground that there's a violation there, then part but not all of your appeal is retroactive. To Mill's part? Yes, I think that's true. Yes. Is Fry retroactive? Well, yes, it is. It's not really a question of whether Fry is retroactive. Fry is just an application of Mill's and Mill's was decided before Mr. Wallace's direct appeal became final. So there's not actually a retroactivity issue here. Mr. Love has conceded that if the first degree murder conviction is resurrected that there must be a new penalty hearing. That was my understanding, yes. It's an unusual appeal because actually you can do worse. Well... If you go back and get tried, you can get convicted of the first degree in a capital sentence, maybe in post. I'm not mistaken about that, am I? Pardon me, I'm not mistaken about that, am I? You can actually do worse by appealing? I don't think that means you shouldn't appeal, but the fact is that you can go back and you can get convicted and the death sentence could be in post. Well, that's true, but we were pretty confident that the Commonwealth was going to appeal, so there wasn't actually anything to lose by taking our own appeal. I see. One minor point that there was some suggestion that possibly this court could change the conviction to second degree murder. I don't think this court has that authority. No, we have some cases that deal with... I don't even think we could direct the Pennsylvania State Court to do that. I don't think so either, Your Honor. On the... Just one factual point that I would like to make on this claim. Mr. Gorby apparently had a fair amount of control over what happened with him. He was released from prison to act as an agent for the ATF, the Alcohol, Tobacco, and Firearms. He was out for a few months. Then, apparently, things were getting hot on the street for him and he requested that he be arrested and then, apparently, things were not good for him in the Washington County Jail. He requested to be moved to Green County Jail, which he was, and then he was moved back to Washington County shortly before Mr. Wallace was extradited and placed there. There's a whole lot of facts about that which, as we have argued, give rise to the inference that he was, in fact, a drug dealer. I know Brown is on the streets, but I'm not sure of that. I haven't followed his... He made a deal here. I guess it was called the deal of the century. He went from life without parole to the street. That's correct. If he didn't get into any trouble, that's where he is. Exactly. One other... It's not a point that I'm 100% sure of, but I believe that at the time of the third trial, Mr. Gorby was still on probation. He got his sentence reduced to 10 years probation. I think he was still on probation and still subject to the terms of the plea agreement. All of the circumstances of Gorby and his moving from one place to another were placed before the jury, and I think they were all placed before the jury. It came about in a very... Some of the facts came out at a pretrial motion to suppress hearing where there was some false testimony by Mr. Gorby. Some of the facts came out at trial. Some of them came out in a post-trial after-discovered-evidence hearing where the defendant was trying to prove that Gorby was involved in the police and that Gorby was paid some cash for doing this, and the trial court found, as a factual matter, no, he wasn't paid. No, it wasn't all fabricated. I see my time is up unless there are further questions. Can you finish your thought, Mr. Lover? I think that was the end of my thought. Thank you, Mr. Lover. Thank you both. The arguments were really very well presented. It's a very difficult case. You don't have rebuttal time, Mr. Vigeli. So we're done, but I do appreciate it. We have your briefs. We certainly will give due regard to your arguments. Thank you very much. It's a difficult case. We'll stand adjourned.